IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 1:19CR00051 |
| | ) |
| v. | ) OPINION AND ORDER |
| | ) |
| TERESA BLANKENSHIP BARRINGER, | ) By: James P. Jones |
| | ) United States District Judge |
| | ) |
| Defendant. | ) |

*S. Cagle Juhan*, Assistant United States Attorney, Charlottesville, Virginia, for United States; *James B. Lees, Jr.*, HUNT & LEES, L.C., Charleston, West Virginia, and *John E. Jessee*, JESSEE, READ & HOWARD, P.C., Abingdon, Virginia, for Defendant.

The defendant, convicted by a jury of three counts of willfully failing to pay over payroll taxes, two counts of wire fraud, and three counts of making false statements to federal agents, has filed a motion seeking judgment of acquittal or a new trial. The motion has been fully briefed and is ripe for decision. While the defendant makes numerous contentions in support of her motion, I find that all lack merit except her attack on the wire fraud convictions and I will grant judgment of acquittal as to those counts.

I. THE CHARGES.

A grand jury of this court indicted Teresa Blankenship Barringer on October 22, 2019. Barringer was indicted on four counts for willfully failing to pay over payroll tax for the fourth quarter of 2015 and the first three quarters of 2016, in

violation of 26 U.S.C. § 7202 (Counts One, Two, Three, and Four). She was also charged with two counts of wire fraud for making false statements to her company's 401(k) plan provider in order to obtain funds from her account, in violation of 18 U.S.C. § 1343 (Counts Five and Six). Finally, Barringer was indicted on three counts for making false statements to federal agents, in violation of 18 U.S.C. § 1001 (Counts Seven, Eight, and Nine). This case was tried beginning on December 11, 2019, and lasted three days. The government dismissed Count One relating to the 2015 fourth quarter payroll taxes on the morning of trial. The jury found the defendant guilty on all other counts.

## II. STANDARDS OF REVIEW.

When considering a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), the trial evidence is to be viewed in the light most favorable to the prosecution and denial is proper where substantial evidence supports the verdict. *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). "Substantial evidence means evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009).[1] In appraising the sufficiency of the evidence, it is not necessary that the trial judge be convinced beyond a reasonable doubt of the guilt of defendant. Instead, "the relevant question

---

[1] I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Finally, the court is "not entitled to assess witness credibility, and [should] assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Jeffers*, 570 F.3d 557, 565 (4th Cir. 2009).

If I enter a judgment of acquittal, I must also conditionally determine whether a new trial on those charges should be granted in the event the judgment of acquittal is reversed or vacated on appeal, "unless the appellate court orders otherwise." Fed. R. Crim. P. 29(d)(3)(A).

I may grant the defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A trial court has broad discretion to grant or deny a defendant's motion for a new trial. *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006). Motions for a new trial based upon the sufficiency of the evidence are generally disfavored and are granted "only when the evidence weighs heavily against the verdict." *United States v. Chavez*, 894 F.3d 593, 607 (4th Cir. 2018). If the motion for new trial is based on erroneous jury instructions, or other trial errors, the error is examined under the harmless error analysis. Fed. R. Crim. P. 52(a).

### III. EVIDENCE AT TRIAL.

The defendant Barringer was the executive vice president of J & R Manufacturing (J & R), and in charge of the day-to-day operations of the company.

She received a salary of as much as $250,000 per year. Her responsibilities ranged from managing vendor and customer communications to handling the business's bookkeeping. Starting from at least 2012, the business began to have financial liquidity issues. The defendant discussed potential solutions with the individual owner of J & R. She recommended reducing the workforce, adjusting the supply orders, or opening a line of credit with a lender. The defendant and the owner could not come to an agreement, and this indecision amplified the business' financial woes. The defendant eventually chose to use her personal funds to keep the business afloat, motivated by her desire to keep her well-paying job.

In 2014, the defendant fell behind on paying the company's payroll taxes to the Internal Revenue Service.[2] As funds became tighter, and after the company received a notification from the IRS that it owed the taxes, the defendant decided to withdraw funds from her vested account in the company's 401(k) retirement plan. At some point in 2014 the defendant reached out to the provider of J & R's 401(k) plan — AXA Equitable Life Insurance Company (AXA) — for guidance on how to withdraw money from her account.[3] She explained that she needed the funds to keep

---

[2] Federal payroll taxes consist of deductions by an employer from its employees' wages, as well as amounts paid by the employer based on those wages. The employer is then required to account for and send these amounts on a quarterly basis to the IRS.

[3] I will refer to AXA as the "provider" of the defendant's 401(k) retirement plan, even though the government's evidence referred to AXA as a "volume submitter sponsor." Group Annuity Application, Gov't Ex. 59C, ECF No. 54–44. The IRS amended the nomenclature in July of 2017, so that an entity who offers a pre-approved form retirement plan to a business is referred to simply as a "provider." IRS, Types of Pre-Approved

J & R in operation, but she was told that was not a permissible reason to make a withdrawal from her account. Rather than accept that answer, the defendant faxed forms to AXA seeking a hardship withdrawal on November 20, 2014. She claimed in her application that she needed the money to prevent foreclosure on her primary residence, which was a permissible reason for withdrawal, although in fact she was ahead on her mortgage payments. The defendant signed the application as both the plan administrator — who had the legal obligation to verify the accuracy of a participant's hardship withdrawal request — and as a plan participant.

After receiving the distribution from her 401(k) account, rather than pay the required payroll taxes, Barringer used the money to pay company vendors and reimburse herself for the prior loans she had made to the company. These decisions led to the payroll taxes not being paid for the first three quarters of 2016. On September 2, 2016, she sought to withdraw the remainder of her 401(k) account. She did not claim a hardship withdrawal as previously but instead claimed that she had left her job at J & R on August 31, 2016. However, in fact she continued to work at the business until October 28, 2016.

Barringer was interview by federal officers on July 25, 2019. During this interview, she repeated the false statements that she had made on the applications to withdraw funds from her 401(k) account. She also lied when she told the agents that

---

Retirement Plans, https://www.irs.gov/retirement-plans/types-of-pre-approved-retirement-plans (last visited July 24, 2020).

she had not gotten paid after August 31, 2016, when in fact she had received checks from the company after that date.

## IV.  ANALYSIS.

Under the Employee Retirement Income Security Act (ERISA), there are two types of retirement contribution plans.  This case involves a defined contribution plan, more specifically a 401(k) plan.  Gov't Ex. 5, Summary Plan Description, ECF No. 54-5.  A defined contribution plan provides an employee with an individual account to which both the employer and employee can contribute a defined amount.  In most plans, a participant may then invest their individual account in any investment option provided under the plan and they bear all the investment risk.  Although a 401(k) carries this risk, each individual account holder is afforded an important protection that does not exist in a defined benefit plan, in that the money in a participant's 401(k) account is their own money.  *Pender v. Bank of Am. Corp.*, No. 3:05-CV-238-MU, 2010 WL 1434297, at *1 (W.D.N.C. Apr. 7, 2010).  Employee benefit plan assets are typically "held in trust by one or more trustees.  Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a).

A 401(k) plan trustee's responsibility is the investment and protection of the plan's assets, whereas the plan administrator — who is typically the employer — handles operational concerns. *The 401(k) Handbook* § 633 (Jane Meachem ed., Jan. 2016 Supp.). An employee may not generally obtain a distribution from a 401(k) plan before the employee separates from service; however, an employee may receive a hardship withdrawal once certain conditions are met. *Id.* at § 420 (Apr. 2019 Supp.). "A plan's hardship withdrawal rules must restrict employees' access to their account money. A plan may provide for hardship withdrawals only in the event of an immediate and heavy financial need and when the withdrawal is necessary to satisfy that need." *Id.*

Determinations of need must be made under either the general "facts-and-circumstances" tests or specific hardship "safe harbors" provided in the IRS regulations on plan distributions, and the determination must be based on the standards set forth in the plan. *Id*. Failure to substantiate compliance with the hardship requirements can result in a disqualifying plan distribution. *Id*. Safe harbor tests are more restrictive than general tests, and a plan may choose which safe harbor tests to adopt. Overall, the safe harbor must satisfy the requirement that the financial need be immediate and heavy, as well as that the withdrawal is necessary to satisfy that financial need. *Id.* at § 422.

The recognized immediate and heavy financial needs to justify a withdrawal include: medical expenses; costs directly related to the purchase of a primary

residence; education expenses, including tuition, for a 12-month period; payments necessary to prevent either eviction of the employee from her principal residence or foreclosure on the mortgage on that residence; funeral expenses; certain expenses relating to the repair of damages to the employee's principal residence; and expenses incurred during a declared disaster. *Id*. And if the plan specifies only some of the events set forth in the safe harbors, "any financial needs that fall outside these circumstances, regardless of their nature and urgency, would not qualify for a hardship withdrawal." *Id*. The IRS may expand this list of immediate and heavy financial needs in revenue rulings, notices, and other documents of general applicability, but not on an individual basis.

### A. THE WIRE FRAUD CONVICTIONS MUST BE SET ASIDE.

The defendant's main challenge is directed towards her wire fraud convictions. I agree that the government failed to prove that the defendant's deceit deprived another of a property interest.

To obtain a conviction for wire fraud, in violation of 18 U.S.C. § 1343, the government must show that the defendant "(1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme." *United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012). The element "to defraud" has "the common understanding of wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something

of value by trick, deceit, chicane, or overreaching." *Carpenter v. United States*, 484 U.S. 19, 27 (1987).

The defendant's sufficiency challenge is that the government did not present evidence that she deprived, or intended to deprive, *another* of something of value because the government did not present evidence of who or what might have been deprived of their property interest by her deception and that she believed she was the sole owner of her 401(k) plan assets. She relies on the Fourth Circuit case of *United States v. Adler*, 186 F.3d 574 (4th Cir. 1999). The *Adler* court noted a distinction between property and a right to that property for purposes of a wire fraud violation, in which the court concluded a creditor-victim's interest in funds to satisfy an unsecured debt — in which the funds were directed to another recipient through deceit by the debtor-defendant — did not have a sufficient interest to meet a wire fraud violation. *Id.* at 577. The *Adler* court clarified that the question in such wire fraud cases of "*whether* something is a 'thing of value' and thus protected under the wire fraud statute from being fraudulently obtained is distinct from the question of *who* has a property right to that 'thing.'" *Id.* at 577 n.4.

The trial record contains substantial evidence of Barringer's misrepresentations and knowledge, including documents, bank statements, and her own statements to law enforcement agents when confronted about her actions. While the trial record supports the defendant's convictions for her failure to pay payroll taxes and her false statements to the federal agents, the government did not

show that another individual or entity had property rights in the 401(k) assets so that her deceit to obtain these funds deprived that other individual or entity of a property right. The government relies solely upon the testimony of Ron Vincek, a representative of AXA, the 401(k) plan provider for J & R. I find that Vincek was not able to sufficiently prove who might have a property interest in Barringer's 401(k) plan account, other than Barringer.

In his testimony before the jury, Vincek discussed the general operation of 401(k) plans and authenticated the specific terms of J & R's 401(k) plan. Vincek also testified as to the consequences AXA might face for an improper distribution due to a plan participant's misrepresentations about eligibility for a hardship withdrawal. Tr. 70, ECF No. 87.

The government thus argues that AXA's relationship with J & R qualified as a property interest because it could be penalized by the IRS for releasing the 401(k) funds based upon a fraudulent hardship withdrawal. Vincek did not claim AXA was the victim of a fraud nor had it suffered any loss or financial hardship due to Barringer's misrepresentations. *Id.* at 73. I find that under *Adler*, AXA's contractual interest is not a qualifying property interest for purposes of the wire fraud statute. It is possible that the trustee designated by J & R, Reliance Trust Company, may have had a property interest in the 401(k) plan. But the government did not introduce any evidence about that relationship; no witness testified concerning it and no document

evidencing the trust arrangement was admitted. Moreover, there was no evidence that any misrepresentations were made to the trustee.

Consequently, the government failed to prove an essential element of wire fraud — that someone was deprived of a property interest due to the defendant's misrepresentations. The wire fraud convictions must be set aside.

If my decision to enter a judgment of acquittal on the defendant's wire fraud convictions is reversed or vacated on appeal, I find that the interest of justice does not require a new trial. Fed. R. Crim. P. 29(d), 33(a). While I find that the government failed to prove one of the elements of wire fraud, if the Fourth Circuit does not agree and instead finds that the government presented sufficient evidence on this element, then a new trial would be inappropriate.

The defendant primarily seeks a new trial on the basis of the following instruction given to the jury:

> Under the law, even though a participant in a 401(k) plan deposited his or her own money in the plan or is otherwise vested in the plan, the plan itself controls the assets of the plan until they are withdrawn by the participant. *Accordingly, the plan has property rights in the assets of the plan until withdrawal occurs*.

Final Jury Instr. 16A, ECF No. 63 (emphasis added).

For the reasons stated concerning the wire fraud convictions, the instruction in question was not supported by the evidence and was thus erroneous. Regardless, because the wire fraud convictions must be set aside, the inclusion of this erroneous instruction was harmless. Fed. R. Crim. P. 52(a). The other convictions could not

have been influenced by this erroneous instruction and thus the remaining counts need not be set aside.

### B. THE COURT CORRECTLY REFUSED TO INSTRUCT ON THE DEFENSE OF GOOD FAITH ON THE TAX CHARGES.

The defendant's main challenge to the tax convictions was the court's refusal to instruct the jury on the good faith defense for those counts, even though the court had provided such an instruction on the wire fraud charges. I find that my decision to refuse to instruct the jury on the good faith defense for the tax charges was correct. "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). In determining the sufficiency of the evidence to support a defendant's request for a jury instruction on a theory of defense, "the testimony most favorable to the defendant should be accepted." *United States v. Ricks*, 573 F.3d 198, 199 (4th Cir. 2009). In rejecting the defendant's requested jury instruction, I found that the defendant's admissions during both her witness interview and her trial testimony proved willfulness and negated any possible good faith defense. The defendant has not presented any additional information or argument to dissuade me from that finding. Second, I properly instructed the jury on the knowledge elements of the offense, so that a good faith instruction was not necessary. *United States v. Kuai Li*, 280 F. App'x 267, 270 (4th Cir. 2008) (unpublished). Finally, my general instruction on willfulness was

sufficient. *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991) (refusing to require separate good faith instruction when instruction on specific intent adequate).

### C. THE COURT CORRECTLY DENIED A MISTRIAL.

The defendant moved for a mistrial after the government's closing argument. In its initial closing, the government argued that the defendant's claimed reliance on a letter from a civil IRS agent — which the defendant testified threatened her with personal liability for J & R's failure to pay its payroll taxes, including assessment of her house — was not a believable reason for her misleading statements to obtain her 401(k) hardship withdrawal and her false statements to law enforcement. The government suggested it was not believable because she did not subpoena the civil agent to testify nor did she introduce the civil IRS notices into evidence. Tr. 47–48, ECF No. 89. The defendant only entered the letter into evidence after the jury began deliberations to create an appellate record. *Id.* at 106. The government noted that reciprocal discovery was not provided to it until a few days before trial, and that the letters were also post-dated from the misleading statements to AXA for the 401(k) hardship withdrawal. *Id.* at 106–07.

In determining whether a defendant's due process rights were violated by a prosecutor's closing argument, the court must consider "(1) whether the remarks were, in fact, improper, and, (2) if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." *United States v. Lighty*, 616 F.3d 321, 359 (4th Cir. 2010). It is well established that

"prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Saint Louis*, 889 F.3d 145, 156 (4th Cir. 2018).

Yet the defendant chose to testify about her state of mind after receiving this alleged civil IRS letter, and she chose not to introduce it into evidence before the jury despite orally offering to do so. The government was, therefore, permitted to comment on the strength of this uncorroborated defense; such a challenge did not shift the burden of proof. *See United States v. Weil*, 561 F.2d 1109, 1112 (4th Cir. 1977) ("When a defendant chooses to testify, he is subject to cross-examination to the same extent as any other witness. It was well within the permissible bounds of cross-examination for the government to inquire whether a witness who could possibly have corroborated the defendant's story had been summoned to court by the defense"). The statements were also made during the government's initial closing statement, so that the defendant addressed the argument and attempted to reduce the sting.

Even if the remark was improper, the defendant cannot show prejudice. In determining prejudice, the court must consider "(1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; . . . (4) whether the comments were deliberately placed before the jury to divert attention to

extraneous matters[;] . . . (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel[;] and (6) whether curative instructions were given to the jury." *Lighty*, 616 F.3d at 361.

In initially deciding the defendant's mistrial motion, I found that the prosecutor's remark was isolated and made only to respond to the uncorroborated defense rather than to divert the jury's attention. Moreover, the comments did nothing to alter the strength of the proof before the jury, and my instructions to the jury that the government carries the burden of proof mitigated any potential that the jury would be misled. Finally, the government's observation was not misleading because the defendant's alleged supportive documents — admitted after the close of evidence — did not actually support her testimony. Accordingly, my denial of the defendant's motion for mistrial was appropriate. *Saint Louis*, 889 F.3d at 156–57.

### D. THE IRS MEMORANDUM OF INTERVIEW WAS PROPERLY EXCLUDED.

The court properly excluded the IRS agent's memorandum of interview from his interview of the defendant because admission of the entire memorandum would have been inappropriate extrinsic evidence under Federal Rule of Evidence 613(a). It would also have been inappropriate extrinsic evidence under Rule 613(b) to impeach the IRS agent, because the defendant did not sufficiently establish inconsistencies to permit admission of the entire memorandum. *United States v. Barile*, 286 F.3d 749, 755 (4th Cir. 2002) (noting that relying on Rule 613(b) "first requires that a prior statement be inconsistent"); *United States v. Gravely*, 840 F.2d

1156, 1163 (4th Cir. 1988) (noting that a prior statement is inconsistent if it, "taken as a whole, either by what it says or by what it omits to say affords some indication that the fact was different from the testimony of the witness whom it sought to contradict").

Furthermore, the memorandum would not be admissible under Rule 613(b) because it was not a summary of statements by the agent, but the agent's summary of the defendant's statements during her interview. *See, e.g., United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("a third party's characterization of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization"). The defendant also explained that her reason for wanting to introduce the memorandum was for her statements to the government to be part of the record, which the government correctly noted was hearsay and impermissible extrinsic evidence to impeach. Tr. 62–63, ECF No. 88. Regardless, the defendant was able to methodically cross-examine the agent about the interview, as well as later testify about her own statements, so that she could argue about the thoroughness of the investigation.

### E. EVIDENCE OF THE DISMISSAL DATE FOR COUNT ONE WAS IRRELEVANT AND PROPERLY EXCLUDED.

Finally, the defendant's challenge to my evidentiary ruling regarding disclosure of when the government dismissed Count One from the Indictment lacks merit. Rule 403 of the Federal Rules of Evidence provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a

danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Courts have "wide discretion to determine what evidence is admissible," although the rule is generally one of inclusion. *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008). I properly sustained the government's objection to requiring the IRS agent to testify about when Count One was dismissed from the Indictment, because it was not relevant to the credibility of the witness. Regardless, the defendant was permitted to ask numerous questions relating to why the count was dismissed, which she later used to argue that the government's investigation had not been thorough; only the date was determined to be irrelevant. Tr. 72–73, ECF No. 88.

## IV. CONCLUSION.

For these reasons, it is **ORDERED** as follow:

1. Defendant's Rule 33 Motion for New Trial and for Rule 29(c) Judgment of Acquittal, EFC No. 93, is GRANTED IN PART AND DENIED IN PART;

2. Judgment of Acquittal is entered in favor of Defendant as to Counts Five and Six of the Indictment;

3. A new trial is not conditionally ordered if the judgment of acquittal is later vacated or reversed;

4. The Clerk shall schedule sentencing on the remaining counts of conviction; and

5. The Probation Officer shall prepare an Addendum to the Presentence Investigation Report reflecting the rulings of the court herein.

        ENTER: August 21, 2020

        /s/ *JAMES P. JONES*
        United States District Judge